# Richmond

THOMAS KINSEY v. L. BRUGH.

November 12, 1931.

Present, Campbell, Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*Paul B. Woodfin* and *H. D. Dillard,* for the plaintiff in error.

*William Allen, A. B. Hunt* and *T. W. Messick,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

Thomas Kinsey, the defendant below, is seeking to reverse a judgment rendered against him in favor of L. Brugh, the plaintiff below, for personal injuries suffered by the plaintiff when the buggy in which he was riding was struck by the defendant's truck.

The defendant moved the trial court to set aside the verdict on the ground that it was against the weight of evidence and without evidence to support it. The refusal of the court to grant this motion is the only error assigned. The facts are substantially as follows:

On December 13, 1929, around 7:30 P. M., the plaintiff in a buggy was traveling north on Lee highway, a short distance south of Troutville; the defendant, driving a truck in the same direction, struck the plaintiff's buggy

from the rear, throwing him to the ground and inflicting the injuries for which in this action he seeks recovery.

The width of the highway along this stretch is eighteen feet of hard surface, plus several feet of dirt shoulder on each side. The right wheels of the buggy were on the dirt shoulder approximately two feet to the east of the edge of the hard surface. There is a concrete bridge across the highway 287 feet south of the point of impact; immediately south of this bridge is a curve in the road which ends very near the bridge. From the north end of this curve to the point of impact, a distance of more than 287 feet, the road is straight.

The defendant states that he knew he was approaching Troutville and that pedestrians frequently used this highway, walking on the hard surface; that the bridge had concrete side walls several feet high; that as he rounded the curve just south of the bridge, he looked several hundred feet north of the bridge and saw the lights of no vehicles traveling in either direction; that as he approached and crossed the bridge he permitted his car to run in a straight line, thereby going somewhat "on the left side of the right half of the hard surface, his light shining on the telephone pole" to the left of the road 232 feet north of the bridge. The reason he gave for leaving the right-hand side of the road was that he might give pedestrians ample room to pass between his car and the eastern wall of the bridge. There were, however, no pedestrians using this stretch of the road at that time. When he reached a point opposite the above-mentioned telephone pole 232 feet north of the bridge he turned his car to the right in order "to get over on the right-hand side of the road entirely. This threw my light to the right-hand side of the road. I did not see plaintiff. It seems my lights must have gone around him. When I got on the right side of the road the buggy of the plaintiff appeared just a few feet in front of me with no lights. He

was traveling well to his right-hand side, his right wheels probably off the road * * *." The impact threw the plaintiff out of the buggy and caused the truck to turn to the right, running several feet down an embankment and through a wire fence.

If the defendant drove his car "on the left half of the right half of the hard surface," then the right side of his truck could not have been more than five feet from the eastern edge of the hard surface. Three feet of this space was in line with the plaintiff's buggy. Yet the defendant claims that he drove 232 feet from the bridge to within fifty-five feet of the point of impact, then turned to "go over entirely on the right-hand side" and did not see the plaintiff until he was within a few feet of him. The defendant proved that his lights were in good condition. Then the plaintiff should have been clearly discernible to him in time to have avoided the accident. It follows that if the defendant had been keeping a proper lookout he would have seen the plaintiff in ample time to have avoided striking the buggy.

It is claimed that the plaintiff was guilty of contributory negligence as a matter of law. The only act of negligence chargeable to him was his violation of Code, section 2145 (50), subdivision f, requiring that a lighted lamp or lantern be displayed on vehicles of this character traveling over the highway at night. The violation of an ordinance or statute does not make the violator guilty of negligence which will support a recovery for damages unless such violation was the proximate cause of the injury. *C. & O. Ry. Co.* v. *Barlow*, 155 Va. 863, 156 S. E. 397; *Virginian Ry. Co.* v. *Haley*, 156 Va. 350, 157 S. E. 776; *Bassett & Co.* v. *Wood*, 146 Va. 654, 132 S. E. 700; *So. Ry. Co.* v. *Bailey*, 110 Va. 833, 67 S. E. 365, 27 L. R. A. (N. S.) 379.

It is elementary that a plaintiff seeking to recover damages for an injury caused by the negligence of the de-

fendant must himself be free from negligence; if it appears that the plaintiff's negligence has contributed as an efficient cause to the injury the court will not undertake to balance the negligence of the respective parties for the purpose of determining which is the most at fault. This general rule, however, is subject to the qualification that where the negligence of the defendant is the proximate cause of the injury and that of the plaintiff the remote cause the plaintiff may recover, notwithstanding his negligence. The court regards the immediate or proximate cause which directly produces the injury, not the remote cause which may have antecedently contributed to it. If the defendant knew, or in the exercise of ordinary care ought to have known, of the negligence of the plaintiff and could have avoided the accident, but failed to do so, the plaintiff is permitted to recover. *Southern Ry. Co.* v. *Bailey, supra; Richmond Traction Co.* v. *Martin's Admr.*, 102 Va. 209, 45 S. E. 886; *C. & O. Ry. Co.* v. *Corbin's Admr.*, 110 Va. 700, 67 S. E. 179.

The burden was on the defendant to prove not only that the plaintiff was violating the statute at the time of the collision, but that such violation was a proximate cause, a direct, efficient, contributing cause of the injury. At the moment of impact the plaintiff displayed no light, but was traveling to the extreme right-hand side of the road. The defendant, approaching from the rear, was under the duty imposed by law (1) to drive on the right half of the highway; (2) at all times to maintain a lookout for other users of the road and to exercise reasonable care to avoid injuring them or their property; (3) in passing another vehicle going in the same direction to leave a space of at least two feet between the two vehicles. Code, section 2145(10)-2145(13).

The defendant admits that his truck struck the rear end of the plaintiff's buggy. His excuse for so operating his machine is that he did not see the plaintiff's buggy in time to avoid striking it. He stated that if he had "hugged"

the right-hand side of the road his lights would have "shone" upon the plaintiff and he would have seen him at a distance of more than 200 feet; that he was looking along the line of his lights as they were shining on a telephone pole to the left of the road and did not look to the right until he turned his car to "get back entirely to the right side of the road," and then the plaintiff was not in line with his light.

The jury found, as they had a right to do from this testimony, that the defendant was guilty of negligence, and that such negligence was the sole proximate cause of the injury, and that the failure of the plaintiff to carry a light was the remote cause which may have antecedently contributed to it. In Berry on Automobiles (6th ed.) volume 1, page 925, this statement is made:

"The fact that a wagon was being driven at night without a light, in violation of the statute, when it was struck by an automobile, is not conclusive on the question of contributory negligence, but is only a circumstance to be considered."

The defendant insists that the case of *Barnes* v. *Ashworth*, 154 Va. 218, 153 S. E. 711, 721, supports his contention. The facts in that case are clearly distinguishable from those in the instant case. There Hagwood, after a minor collision with a Studebaker car, parked his car on the left-hand side of the road; the Studebaker car, facing the same direction, was parked on the right-hand side, a little in advance of the Hagwood car, with barely space between to permit the passage of other cars. Hagwood went over to the Studebaker car and stood in this narrow space between the two cars and while he was in this position Ballentine, driving another car, with his headlights burning, approached from the rear, and attempted to pass the Hagwood car on the left. Within a short distance from the car, Ballentine found that he would be unable to pass to the left so he swerved his car to the right and attempted to pass between the parked cars. Just at this time Hagwood straightened

up from a stooping position and was struck and killed by the Ballentine car. Not only was Hagwood facing the direction from which the Ballentine car was coming, but he was warned by a companion, Rodman, to look out for the lights, yet he took no steps to remove himself from the dangerous situation which he had created by his own negligence. The court said that Hagwood "by his own negligence had placed himself in peril and created the double emergency under which Ballentine was required to act." He knew of the narrow space between the cars, he knew that the Ballentine car was approaching, yet he failed to use ordinary care to remove himself from the dangerous position which he had created, and recovery was denied.

The plaintiff in the instant case was traveling on the extreme right side of a wide, straight, level road, with nothing on the highway which tended in the least to obstruct the defendant's vision, yet he so operated his truck as to collide with the plaintiff's buggy, notwithstanding that five-sixths of the road was available to his use in passing the plaintiff. His only excuse for the accident is that he failed to see the plaintiff; that his "lights must have gone around him." It is improbable that an automobile with properly equipped headlights could be so operated on the hard surface of a straight stretch of road such as that described, under the conditions disclosed, that its operator, if keeping a proper lookout, would fail to see thereon a moving object the size of a horse and buggy in time to avoid a collision.

At any rate, whether or not there was any causal connection between the plaintiff's failure to display a light and the injury was a question of fact which the jury have decided adversely to the defendant. The record does not contain instructions given or refused by the court. It is, therefore, conclusively presumed that the jury were properly instructed on the legal question involved. There is no error and the judgment is affirmed.

*Affirmed.*